**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** *Plaintiff* <br> vs. <br> **DANA M. PEACH,** *Defendant* | Case No. 21-CR-20060-6-JAR |

Pursuant to Fed. R. Crim. P. 12(b)

**MOTION TO DISMISS INDICTMENT
AND FOR BILL OF PARTICULARS**

**THE DEFENDANT**, Dana M. Peach, by and through Counsel, Branden Smith, of Smith Legal, LLC, moves the Court to dismiss the Indictment because the government failed to charge the defendant within the 10-year statute of limitations; and for a bill or particulars.

In support of her motion, Dana Peach states as follows:

**MOTION TO DISMISS**

The statute of limitations for Forced Labor is 10 years. 18 U.S.C. § 3298. In a conspiracy case, the statute of limitations starts to run from the last overt act during the conspiracy. *Fiswick v. United States*, 329 U.S. 211, 216, 67 S. Ct. 224, 227, 91 L. Ed. 196 (1946); *United States v. Jaynes*, 75 F.3d 1493, 1505 (10th Cir. 1996). The overt acts alleged may mark the duration, as well as the scope, of the conspiracy. *Fiswick*, 329 U.S. at 216. The Indictment was filed on October 20, 2021. (Doc. 1) Therefore, the government must show that offense conduct occurred after October 20, 2011. The government cannot make such a showing.

### Count 1 – Conspiracy to Commit Forced Labor

All defendants are charged in Count 1 with conspiracy to commit forced labor in violation of 18 U.S.C. § 1589. As to all defendants, the government claims the offense conduct occurred on or about October 28, 2000 and continued through November 30, 2012. Indictment, Doc. 1, at ¶ 16. Specifically, the government alleges Dana Peach engaged in the following three overt acts in further of the conspiracy:

1. "In or about 2007, Peach transported MV-1 from Kansas to New Jersey for the purpose of securing MV1's labor." Indictment at ¶ 41.

2. "On or about and between October 28, 2000 and December 31, 2008, Jenkins, Majeed, Rassoul, Aubrey, Staton, Kinard, Peach, and Greenwell made decisions about where in the country to move victims for labor. The defendants made these decisions through in-person discussions that occurred in the District of Kansas or through telephonic discussions in which some defendants were physically present in the District of Kansas." *Id.*

3. "On or about and between 2005 and 2011, Peach supervised UNOI businesses in New Jersey and New York. In her roles as supervisor, she made decisions about victims' labor and services, as well as whether and how to discipline victims." *Id.*

Based on the overt acts listed above, the "last overt act" during the conspiracy occurred sometime in 2011 when Peach supervised businesses in New Jersey. Indictment at ¶ 53. However, the government's allegations do not align with the statements of MV-1 and MV-3, the two complaining witnesses specifically mentioned in connection to Dana Peach.

MV-1 told the FBI that she returned to Kansas City in 2008 when she was 17 years old. MV-3 told the FBI that she returned to Kansas City in 2009. Other complaining witnesses told the FBI that they were supervised by other individuals – and not Dana Peach - while in New Jersey that may have been during 2011. Based on these statements, the "last overt act" during the conspiracy occurred sometime in 2009 when MV-3 returned to Kansas City. Therefore, for Count 1, the

government would have had to indict Dana Peach by the end of 2019. The Indictment was filed on October 21, 2021 and, therefore, Count 1 must be dismissed.

### Count 2 – Forced Labor Against MV-3

The Indictment alleges that Dana Peach, and others, engaged MV-3 in forced labor from October 28, 2000 through August 31, 2012. Indictment at ¶ 64.  However, MV-3's statements to FBI demonstrate the alleged offense conduct only occurred through 2009.

According to MV-3, she "bounced around" but resided most of the time in Kansas City. MV-3 was born into the United Nation of Islam ("UNOI") in 1990. Royall Jenkins is MV-3's grandfather.   MV-3 was born in Maryland and she grew up there. MV-3 lived in the home where Royall Jenkins lived, but her mother did not.  In 1998, at age 7 or 8, MV-3 moved to Kansas City to live with her mother.

MV-3 worked at the UNOI bakery and supermarket in Kansas City, Kansas, between the ages of 8 and 14.  MV-3 recalled the people in charge were Trevor Gadson, Yutania, and Yutania's husband, James X.  MV-3 lived with Dana Peach at Heaven's Inn in when she was about 10 or 11 years old.

In 2003 or 2004, MV-3 was pulled out of school to work full time in the businesses.  She was 13 years old at the time.  MV-3 did not say who made this decision to remove her from school. Dana Peach and other members organized the work assignments.  In 2004, MV-3 left Kansas City and relocated to Connecticut.  MV-3 stayed there until 2006 when she returned to Kansas City.

In 2008 MV-3 was sent to the temple in New Jersey.  She was 17 or 18 years old when she relocated.  MV-3 worked full-time at the UNOI restaurants in New Jersey and Harlem, New York. According to MV-3, Dana Peach, Josilyn Greenwell, and Octania Kinnard ran these locations.   MV-

3 stayed in New Jersey until 2009 when she returned to Kansas City.   Although it is unclear whether MV-3 was 17 to 18 years old when she moved to New Jersey, she was an adult when she left in 2009.

In early 2010, MV-3 was sent to North Carolina.  Dana Peach was not involved in MV-3's relocation.  MV-3 was put on part-time status during Summer 2011 while she was in North Carolina.  Because MV-3 was now part-time she needed to work outside UNOI. She tried looking for a job, but she was told to stop looking for work presumably because she ran the carryout, and the organization did not want to find a replacement.  MV-3 also needed to find a home after being put on part-time status. However, no one would let her live with them because she was not in good standing with UNOI.  MV-3 was eventually kicked out of the North Carolina location, so she returned to Kansas City.  Upon returning to Kansas City, MV-3 worked at the UNOI warehouse and medical center. She lived with an old member who did not make her pay rent. MV-3 eventually found an outside job at a restaurant.  MV-3 left UNOI around August 2011.

MV-3's statements to the FBI demonstrate the alleged offense conduct related to Dana Peach ended in 2009 when MV-3 left New Jersey.  Dana Peach was not involved with MV-3 while MV-3 was in North Carolina. She was not involved with MV-3 from the time MV-3 returned to Kansas City up to the time MV-3 left UNOI in August 2011.   The offense conduct did not occur beyond August 2011 and up to August 2012 as the government alleges.  Indictment at ¶ 64.

The government will likely argue that the offense conduct is subject to the lifetime statute of limitations under 18 U.S.C. § 3283, which allows prosecution for an offense involving sexual or physical abuse, or kidnapping a child.   There is no evidence to suggest Dana Peach sexually abused or kidnapped MV-3, so the offense conduct is limited to alleged physical abuse.

"Physical abuse" is not defined in § 3283. In *United States v. Kepler*, the United States District Court for the Northern District of Oklahoma held that the term "abuse," as stated in 18 U.S.C. § 3283, "connotes physical injury as the result of physical maltreatment." *United States v. Kepler*, No. 20-CR-00276-GKF, 2021 WL 4027203, at *4 (N.D. Okla. Sept. 3, 2021). Noting that other courts have construed 18 U.S.C. § 3283 using the definitions included in 18 U.S.C. § 3509, the *Kepler* court defined "physical injury" to include lacerations, fractured bones, burns, internal injuries, severe bruising or serious bodily harm. *Id.* Relying on the plain meaning of "laceration," the court defined a laceration to mean "a torn or ragged wound, usually of some depth." *Id.* The court further defined "serious bodily harm" as "serious physical impairment of the human body; esp., bodily injury that creates a substantial risk of death or that causes serious, permanent disfigurement or protracted loss or impairment of the function of any body part or organ." *Id.*

In January 2022, during an interview with the FBI, MV-3 was asked if she sustained any short- or long-term injuries as a result of her "punishments" received during her time with UNOI. MV-3 stated that she would have had obvious cuts and bruises because of the physical abuse she received from Etenia Kinard, Jacelyn Greenwell, Yvette, and Oswanna. MV-3 further recalled a time when Etenia Kinard fractured her wrist, which never healed properly. MV-3 further stated that she broke her ankle and fractured a knee while working in UNOI, but she did not attribute the injury to any specific people. Despite being specifically asked about injuries, MV-3 never said that Dana Peach engaged in any physical abuse against MV-3. Therefore, the 10-year statute of limitations under 18 U.S.C. § 3298 applies.

## BILL OF PARTICULARS

Dana Peach further moves for a Bill of Particulars defining the facts and circumstances on which the government will rely at trial to prove the charges against her. The Indictment lacks specificity in many regards. It is full of vague allegations that make it impossible to prepare a defense. For example, the government alleges that "[o]n or about and between October 28, 2000 and December 31, 2008, Jenkins, Majeed, Rassoul, Aubrey, Staton, Kinard, Peach, and Greenwell made decisions about where in the country to move victims for labor. The defendants made these decisions through in-person discussions that occurred in the District of Kansas or through telephonic discussions in which some defendants were physically present in the District of Kansas." Indictment at ¶ 42. This allegation spans nearly eight years. Moreover, the allegation does not state specifically who constitutes the "victims."

## CONCLUSION

The defendant has shown the offense conduct as alleged occurred outside the 10-year statute of limitations. Regarding Count 1, the "last overt act" during the conspiracy occurred sometime in 2009 when MV-3 left New Jersey and returned to Kansas City. The government cannot produce evidence that Dana Peach conspired to engage MV-1 or MV-3 in forced labor beyond 2009. Likewise, MV-3 left New Jersey in 2009 so she could not have been subject to forced labor by Dana Peach up to August 31, 2012 as alleged in Count 2. Moreover, there is no evidence to suggest that Dana Peach engaged MV-3 in forced labor after MV-3 moved back to Kansas City from New Jersey. The Indictment filed on October 20, 2021 must be dismissed because it was filed outside the 10-year statute of limitations.

**WHEREFORE,** in consideration of the above and foregoing, and as may further be supplemented by testimony, argument, and citations of authority (orally or in writing), the defendant respectfully requests the Court for an Order dismissing the Indictment with prejudice; for a bill of particulars, and for such other and further relief the Court deems just and proper.

**IT IS SO MOVED.**

Respectfully submitted,

_____
**Branden Smith #22761**
SMITH LEGAL, L.L.C.
719 Massachusetts Street, Suite 126
P.O. Box 1034
Lawrence, Kansas 66044
(785) 856-0780  P
(785) 856-0782  F
branden@smithlegalllc.com

ATTORNEYS FOR DEFENDANT
DANA M. PEACH

### CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of March, 2023, a true and correct copy of the above and foregoing was electronically filed with the Clerk of the Court by using the CM/ECF that will send a notice of electronic filing and access to the document to counsel of record.

By,

_____
**Branden Smith #22761**