IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      **Plaintiff,**<br><br>      v.<br><br>**KAABA MAJEED,**<br>**YUNUS RASSOUL,**<br>   a.k.a. YUNUS RASSOULL,<br>**JAMES STATON,**<br>   a.k.a. ADAM WITHROP,<br>**RANDOLPH RODNEY HADLEY,**<br>**DANIEL AUBREY JENKINS,**<br>**DANA PEACH,**<br>**ETENIA KINARD,**<br>   a.k.a. ETENIA KINNARD, and<br>**JACELYN GREENWELL,**<br><br>      **Defendants.** | Case No. 21-20060-JAR |

## MEMORANDUM AND ORDER

Defendants in this matter filed several motions for pretrial disposition. This Memorandum and Order addresses the motions asserting constitutional challenges to the statute charged in the Indictment, 18 U.S.C. § 1589. Before the Court are Defendant James Staton's Motion to Dismiss for Failure to State a Claim (Doc. 162);[1] joined by Defendants Kaaba Majeed, Randolph Rodney Hadley, Daniel Aubrey Jenkins, Etenia Kinard, and Jacelyn Greenwell; Defendant Greenwell's Motion to Dismiss (Doc. 151);[2] and Defendant Jenkins's Motion to

---

[1] This motion is joined by Majeed, Hadley, Jenkins, and Greenwell.

[2] This motion is joined by Jenkins and Hadley.

Dismiss (Doc. 161).³ The Government filed a response in opposition to these three motions.⁴ The Court heard oral argument on these motions on June 26, 2023. Having fully considered the briefs and the parties' oral arguments, the Court is prepared to rule on the motions to dismiss. As explained more fully below, the Court denies Defendants' motions to dismiss challenging the constitutionality of 18 U.S.C. § 1589.

**I.   Background**

On October 20, 2021, the Government filed an eight-count Indictment against Defendants Kaaba Majeed, Yunus Rassoul, James Staton, Randolph Rodney Hadley, Daniel Aubrey Jenkins, Dana Peach, Etenia Kinard, and Jacelyn Greenwell.⁵ Defendants Peach and Rassoul are not involved in the motions to dismiss for constitutional challenges addressed by this Memorandum and Order.

The Court includes by reference the factual background included in the Memorandum and Order addressing the motions to dismiss on the basis of the statute of limitations and pre-indictment delay, the motion for bills of particulars, and the motions to sever. The Indictment charges all Defendants with one count of conspiracy to commit forced labor in violation of 18 U.S.C. §§ 371 and 1589. Defendants are also charged in the Indictment with substantive violations of the forced labor statute, 18 U.S.C. §§ 1589. The substantive charges include aiding and abetting allegations under 18 U.S.C. § 2.

---

³ This motion is joined by Majeed and Hadley. This Memorandum and Order deals only with the portions of Defendant Jenkins's Motion to Dismiss relating to his argument that 18 U.S.C. § 1589 as applied to this case is an impermissible federalization of a state crime. The remainder of Jenkins's motion to dismiss is dealt with in a separate Memorandum and Order.

⁴ Doc. 183.

⁵ Doc. 1.

2

**II.     Standards**

"An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense."[6] An indictment may not be challenged based on the strength or weakness of the government's case, but only on whether the allegations, if taken as true, support an indictment.[7] A very narrow exception to the rule against probing the factual underpinnings of an indictment exists when undisputed facts establish that, "as a matter of law, the government is incapable of proving its case beyond a reasonable doubt."[8]

The motions to dismiss now before the Court assert facial and as-applied challenges under the First, Fifth, and Tenth Amendments. A facial challenge asserts that "no application of the statute would be constitutional."[9] In such cases, "a plaintiff can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the Act would be valid,' *i.e.*, that the law is unconstitutional in all of its applications."[10] An as-applied challenge, on the other hand, acknowledges that a statute can be applied in a constitutional manner in some cases, but asserts that the statute's application to the plaintiff's concrete case is unconstitutional.[11] However, "the line between facial and as-applied relief is a fluid one, and

---

[6] *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006) (quoting *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997)).

[7] *Id*.

[8] *Id*. (quoting *United States v. Hall*, 20 F.3d 1084, 1088 (10th Cir. 1994).

[9] *Sabri v. United States*, 541 U.S. 600, 609 (2004).

[10] *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (alteration in original) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

[11] *United States v. Carel*, 668 F.3d 1211, 1217 (10th Cir. 2011) (citations omitted).

many constitutional challenges may occupy an intermediate position on the spectrum between purely as-applied relief and complete facial invalidation."[12]

### III. Discussion

#### A. First Amendment Challenges

Staton and Greenwell assert facial challenges to the forced labor statute under the First Amendment. Staton argues that the forced labor statute violates the First Amendment by restricting freedom of speech; both Staton and Greenwell argue that it violates the First Amendment by restricting freedom of association. These First Amendment challenges are based on both overbreadth and vagueness. When there is a facial First Amendment challenge to a statute based on overbreadth, "the challenger must show that it 'prohibits a substantial amount of protected speech.'"[13] When there is a First Amendment facial challenge based on vagueness, the challenger must show that the statute "threatens to chill constitutionally protected conduct."[14]

At the outset, the Government contends that any facial challenge to the Forced labor statute based on the First Amendment is inappropriate because, as the Seventh Circuit found, "the action criminalized by § 1589—'knowingly providing or obtaining the labor or services of a person'—is sufficiently removed from anything protected by the First Amendment that [the court] must evaluate it as-applied."[15] The Government also asserts that any as-applied challenge to the Forced labor statute is premature given the limited record before the Court.[16] As explained

---

[12] *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 908 (10th Cir. 2016) (quoting *Am. Fed'n of State, Cnty, & Mun. Emps. Council 79 v. Scott*, 717 F.3d 851, 865 (11th Cir. 2013)).

[13] *United States v. Hernandez-Calvillo*, 39 F.4th 1297, 1302 (10th Cir. 2022) (quoting *United States v. Williams*, 533 U.S. 285, 292 (2008)).

[14] *Melnick v. Camper*, 487 F. Supp. 3d 1039, 1058 (D. Colo. 2020) (citing *United States v. Gaudreau*, 860 F.2d 357, 360 (10th Cir. 1988)).

[15] *United States v. Calimlim*, 538 F.3d 707, 710 (7th Cir. 2008).

[16] Doc. 183 at 6–7.

above, the Tenth Circuit has held that "[a]s to whether the claim at issue is properly viewed as a facial or as-applied challenge, the label is not what matters. Facial challenges and as-applied challenges can overlap conceptually."[17] Thus, for the purpose of deciding these motions to dismiss, the Court considers both the facial and as-applied challenges together.

### 1.  Freedom of Speech

Staton challenges the Forced labor statute on the basis that it violates the First Amendment by restricting the freedom of speech. In support of his argument, Staton points to the Seventh Circuit's decision in *United States v. Calimlim*.[18] But in that case, the Seventh Circuit held that the phrase "threat of serious harm" in the forced labor statute did not violate the First Amendment because, although it may have banned behavior that involved speech, it did not ban speech itself.[19] Staton concedes that this was the Seventh Circuit's ruling, but argues that its decision is flawed because the forced labor statute restricts "threats" of serious harm which, he contends, is an explicit restriction of speech. Put another way, Staton's argument is that the word "threat" in the statute means "speech," such that a limitation on it would violate the First Amendment. In response, the Government asserts that the Seventh Circuit's blatant rejection of Staton's argument "blunts any overbreadth attack."[20] Moreover, the Government points to the language in *Calimlim* that the forced labor statute includes a *scienter* requirement, which "limits the prohibited speech to unprotected speech."[21]

---

[17] *United States v. Supreme Court*, 839 F.3d 888, 908 (10th Cir. 2016).

[18] 538 F.3d 707, 710 (7th Cir. 2008).

[19] *Id.*

[20] Doc. 183 at 18.

[21] *Calimlim*, 538 F.3d at 712.

The Court agrees with the Seventh Circuit's reasoning in *Calimlim*. Indeed, like the Seventh Circuit, the Court is unpersuaded that the forced labor statute places any limit on speech itself, rather than a limit on an activity that may (or may not) involve speech. But even if the Court was so persuaded that the statute regulates speech, Staton's argument would still fail due to the *scienter* requirement in the forced labor statute because even if the statute did ban speech itself, it only banned speech unprotected by the First Amendment.[22] For these reasons, the Court denies Staton's motion to dismiss on the grounds that the forced labor statute violates the First Amendment by restricting freedom of speech.

### 2. Freedom of Association

Staton and Greenwell both challenge the forced labor statute on the basis that it violates the First Amendment by restricting freedom of association and conduct that ensnares legal day-to-day activities. They argue that the forced labor statute is overly broad and vague because the phrase "threat of serious harm" encompasses protected relationships. Specifically, Staton contends that the phrase "threat of serious harm" ensnares everyday activities such as parents disciplining their children in varying degrees, which he contends is protected by the First Amendment. Similarly, Greenwell asserts that in addition to parent-child relationships, the statute's definition of "serious harm" also encompasses relationships such as an employer supervising employees and a teacher educating children.

Greenwell also relies on the Sixth Circuit's decision in *United States v. Toviave*.[23] In that case, the defendant was convicted under the forced labor statute for making four of his young

---

[22] *Id.*; *see also United States v. Gagliardi*, 506 F.3d 140, 148 (2d Cir. 2007) (alteration omitted) ("Speech is not protected by the First Amendment when it is the very vehicle of the crime itself." (quoting *United States v. Rowlee*, 899 F.2d 1275, 1278 (2d Cir. 1990)).

[23] 761 F.3d 623, 624 (6th Cir. 2014).

6

relatives cook, clean, do laundry, and babysit, and would beat them if they misbehaved or failed to follow one of his many rules. The Sixth Circuit reversed his conviction, finding that while his actions were deplorable, he had not engaged in forced labor, a federal crime; rather, the defendant's actions likely constituted child abuse, a state crime.[24] Greenwell contends that the Sixth Circuit's decision in *Toviave* demonstrates that the forced labor statute is overbroad.

In response to these arguments, the Government asserts that while the Supreme Court has recognized protections for certain relationships, it has explicitly not recognized "a generalized right of 'social association.'"[25] Rather, the Government argues, the only scenario that conceivably touches on a First Amendment protected association is the parent-child scenario, but even then, the hypothetical scenarios laid out by Staton and Greenwell did not involve a parent "knowingly" using a "threat of serious harm" against a child. Furthermore, the Government contends that Greenwell's reliance on *Toviave* is misplaced and that it does not, as she claims, demonstrate that the forced labor statute is overbroad. Instead, the Government maintains that the *Toviave* decision merely limited the forced labor statute's outer reach to avoid intruding on the normal role of lawful caregivers, which state law properly regulates.

The Court finds that the forced labor statute is not overly broad or vague such that it violates the First Amendment right to freedom of association. As the Government points out, courts that have considered whether the forced labor statute is unconstitutionally vague or overbroad on this basis have all held that they are not.[26] While these decisions are not binding

---

[24] *Id.*

[25] *City of Dallis v. Stanglin*, 490 U.S. 19, 25 (1989).

[26] *See, e.g., United States v. Toure*, 965 F.3d 393, 400 (5th Cir. 2020) (finding that "no court has ever held that [the forced labor statute's] definition of 'serious harm' is unconstitutional. In fact, the courts that have addressed the issue have held the opposite."); *United States v. Calimlim*, 538 F.3d 706, 710–13 (7th Cir. 2008) (rejecting the defendant's argument that the forced labor statute was unconstitutionally vague or overbroad).

on this Court, they are persuasive, and in any event, the Court agrees with the reasoning set forth therein. Indeed, like the Seventh Circuit in *Calimlim*, this Court finds that the forced labor statute is not unconstitutionally vague as it "provides sufficient notice of what it criminalizes;"[27] and is not unconstitutionally overbroad as it "does not criminalize any speech; it bans behavior that may involve speech . . . blunt[ing] any overbreadth attack."[28]

Finally, the Court agrees with the Government that Greenwell's reliance on *Toviave* is misplaced. Greenwell overreads *Toviave*; the Sixth Circuit in that case did not hold that the forced labor statute was unconstitutionally overbroad. Rather, the *Toviave* decision is focused on whether the forced labor statute impermissibly federalized a state law crime.[29] That is not the issue presented here by Greenwell's First Amendment challenge. It is, incidentally, an issue presented by Jenkins, which the Court addresses below. But as for whether the forced labor statute is unconstitutionally vague or overbroad, such that it violates the First Amendment right to the freedom of association, the Court finds that it is not and does not. Therefore, the Court denies Staton's and Greenwell's motions to dismiss on these grounds.

### B. Fifth Amendment Challenge

Although not stated explicitly, Staton appears to assert that the forced labor statute is unconstitutionally vague under the Due Process Clause of the Fifth Amendment. When a court considers a vagueness challenge to a penal statute under Fifth Amendment due process challenges, "it must begin with 'the presumption that the statute comports with the requirements of federal due process and must be upheld unless satisfied beyond all reasonable doubt that the

---

[27] *Calimlim*, 538 F.3d at 710.

[28] *Id.* at 712 (citing *City of Chicago v. Morales*, 527 U.S. 41, 52–53 (1999) (noting that an unconstitutionally vague statute criminalizing "loitering," which may or may not involve speech and association, was not subject to an overbreadth attack)).

[29] *Toviave*, 761 F.3d at 627.

legislature went beyond the confines of the Constitution.'"[30]  Regardless of whether a Fifth Amendment challenge is facial or as-applied, "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand."[31] "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness."[32]  Therefore, the court should "examine the complainant's conduct before analyzing other hypothetical applications of the law."[33]

As set forth above, the Court is satisfied that the forced labor statute provides sufficient notice of what it criminalizes, especially given that it includes a *scienter* requirement, and therefore is not violative of the Due Process Clause of the Fifth Amendment.  Thus, to the extent Staton's motion to dismiss asserts that the forced labor statute is unconstitutionally vague under the Due Process Clause of the Fifth Amendment, the Court denies the motion on those grounds.

### C.   Tenth Amendment Challenges

Finally, Jenkins moves to dismiss the Indictment on the basis that the forced labor statute is an impermissible federalization of the state law crime of child abuse in violation of the Tenth Amendment.  The Tenth Amendment provides that powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.  To challenge a statute as violative of the Tenth Amendment, the challenger must show that either the Constitution has not conferred any authority to Congress to enact the statute, or that the Constitution explicitly confers exclusive authority over the subject matter of the

---

[30] *United States v. Hunter*, 663 F.3d 1136, 1141 (10th Cir. 2011) (quoting *United States v. Welch*, 327 F.3d 1081, 1094 (10th Cir. 2003)).

[31] *United States v. Saffo*, 227 F.3d 1260, 1270 (10th Cir. 2000) (alteration omitted) (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n.7 (1982)).

[32] *Id*.

[33] *Vill. of Hoffman Estates*, 455 U.S. at 495.

statute.[34]  Even if a state has authority to regulate the subject matter of the statute, because "ours is a system of dual sovereignty," that would not "preclude Congress from legislating in the same area so long as it stays within its enumerated powers."[35]

Specifically, Jenkins argues that, just like in *Toviave*, the conduct he is accused of amounts to no more than child abuse which is a "quintessentially state crime" such that application of the forced labor statute to his conduct is an "impermissible federal overreach."[36] Jenkins contends that the physical abuse he is alleged to have committed against the victims was punishment for behavior such as stealing food or looking at pornography, and not in response to their refusal to work and, therefore, is not sufficiently related to work to constitute an act of forced labor.  Rather, Jenkins urges the Court to find that such conduct is "merely" child abuse and should be prosecuted by the state instead of federally.

The Government makes several arguments in response.  First, the Government contends that any challenge to the constitutionality of the forced labor statute as applied to the particular facts of this case is premature on a motion to dismiss.  The Government points to the fact that the *Toviave* decision, which Jenkins relies on, arose out of the defendant's posttrial appeal of his conviction, giving the Sixth Circuit the benefit of a fully developed trial record to determine whether the facts presented at trial were sufficient to support the conviction.  Because the same is not true here, the Government argues that it would be inappropriate to apply the reasoning of *Toviave* at this pretrial stage.

---

[34] *See, e.g., United States v. Mikhel*, 889 F.3d 1003, 1024 (9th Cir. 2018) (rejecting Tenth Amendment challenge to the Hostage Taking Act because Congress was acting under the Necessary and Proper Clause).

[35] *United States v. Rutherford*, 472 F. App'x 863, 864 (10th Cir. 2012).

[36] Doc. 161 at 4.

Second, the Government argues that even if the reasoning of *Toviave* applied at this stage of the case, the facts are distinguishable in three distinct ways. The first difference, according to the Government, is the labor itself: in *Toviave*, the victims were performing only household tasks, whereas the victims in this case performed both those household tasks as well as in businesses doing tasks beyond basic household chores. Second, the Government argues that the relationships between the perpetrators and the victims are different. In *Toviave*, the defendant was a relative of all four victims whereas here, the Defendants were not related to the victims. Finally, the Government asserts that the coercive acts in this case differ from those in *Toviave* because in that case, the defendant's use of coercion was designed to compel the children to perform household chores *and* improve academic performance, whereas here, Defendants' use of coercion was *only* to get them to perform the forced labor, not for another reason (such as academic performance).

Finally, the Government argues that the federalization of forced labor is authorized by the Constitution and therefore does not violate the principles of federalism as Jenkins contends. The Government asserts that the Thirteenth Amendment gives Congress the explicit authority to enforce its prohibitions, and that the Supreme Court has recognized this authority "to determine what are the badges and incidents of slavery, and the authority to translate that determination into effective legislation," provided that its determination is rational.[37] The Government points out that Jenkins was unable to cite a single case finding that Congress's enactment of the forced labor statute was an irrational or improper exercise of its Thirteenth Amendment authority.

The Court finds that the forced labor statute is not an impermissible federalization of a state law crime on its face or as applied to the facts of this case. First, it is clear to the Court that

---

[37] Doc. 183 at 23 (quoting *Jones v. Alfred H. Mayer*, 392 U.S. 409, 439–40 (1968)).

Congress passed the forced labor statute pursuant to its explicit authority to pass legislation implementing the Thirteenth Amendment, as other courts have similarly held.[38] Thus, contrary to Jenkins's argument, the Court finds that the federal government has a sufficient interest in protecting against forced labor such that the statute does not impede on the states' rights under the Tenth Amendment.

Second, the Court is unpersuaded by Jenkins' argument that applying the forced labor statute to the conduct he has been accused of violates the federal-state balance required by the Tenth Amendment. Indeed, the Court agrees with the Government that Jenkins' reliance on *Toviave* is misplaced given the procedural posture and vastly different facts. Even taking as true Jenkins' argument that the abuse he perpetrated against the victims was as punishment for stealing food or viewing pornography, and not in direct correlation to labor, the Court found the Government's argument at the hearing compelling that this abuse was part of a larger scheme of creating an environment of fear for no purpose other than to force labor. Unlike in *Toviave*, where the court found that the defendant was motivated by forcing household labor *and* academic success, the Court here sees no evidence of a motive other than forced labor in a workplace environment. For all of these reasons, the Court denies Jenkins' motion to dismiss on the basis that the forced labor statute violates the Tenth Amendment.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant James Staton's Motion to Dismiss for Failure to State a Claim (Doc. 162) l is **denied**.

---

[38] *See, e.g., Toviave*, 761 F.3d at 629 (noting that the forced labor statute was "passed to implement the Thirteenth Amendment's [prohibition] against slavery or involuntary servitude"); *see also Burrell v. Loungo*, 750 F. App'x 149, 159–160 (3d Cir. 2018) (noting that "while the Thirteenth Amendment's primary purpose 'was to abolish the institution of African slavery', it was not 'limited to that purpose;'" and finding that by passing the forced labor statute, "Congress intended to reach cases in which persons are held in a condition of servitude through nonviolent coercion, as well as through physical or legal coercion." (quoting *Muchira v. Al-Rawaf*, 850 F.3d 605, 617 (4th Cir. 2017))).

**IT IS FURTHER ORDERED** that Defendant Greenwell's Motion to Dismiss (Doc. 151) is **denied**.

**IT IS FURTHER ORDERED** that Defendant Jenkins's Motion to Dismiss (Doc. 161) is **denied**.

**IT IS SO ORDERED.**

Dated: July 27, 2023

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE
