# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
### KANSAS CITY DIVISION

**UNITED STATES OF AMERICA**,
                                    *Plaintiff*,


            v.                          Case No. **21-20060-JAR**

**JAMES STATON**,
                        *Defendant*.
_____

## DEFENDANT STATON'S RESPONSE TO GOVERNMENT'S MOTION IN LIMINE TO ADMIT EVIDENCE
_____

The Government seeks permission to introduce a laundry list of bad-acts evidence, claiming that this evidence is necessary to a forced-labor prosecution. Yet the evidence that the Government seeks to introduce does not make any material fact more or less likely. Rather, the Government's parade of horribles will only inflame the jury against the Defendants.

### Arguments & Authorities

The United States has charged violations of the 2000 version of the forced-labor statute.[1] To prevail on those charges, the Government must prove, among other things, that a defendant obtained the labor of a

_____

[1] Doc. 233 at 2, n.1 (citing 18 U.S.C. § 1589 (2000)).

1

person "by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint... ."[2] The Government attempts to stretch this language further than the text will bear, and then rests its arguments on this strained premise. But its premise is faulty, making its arguments untenable.

I.    **The Government's motion relies on an unreasonably broad reading of the statute's text and actions that do not qualify as "serious harm."**

A.    *A "scheme, plan, or pattern" must be more than the enforcement of religious doctrine.*

The Government argues that the "scheme, plan, or pattern" used to obtain free labor can be more than just threats of "serious harm" or "physical restraint."[3] Rather, its argument goes, the scheme could involve no threats of serious harm or physical restraint at all—it could use mere "psychological coercion… ."[4] And *that* coercion could result in a "climate of fear," which causes a person to involuntarily labor.[5] Thus, the Government transforms the statutory language (causing a person to believe nonperformance would cause "serious harm or physical

---

[2] 18 U.S.C. § 1589 (2000).
[3] Doc. 233 at 2-3.
[4] *Id.* at 3 (citation omitted).
[5] *Id.* at 3-4 (collecting cases).

restraint") to a more amorphous one (creating a generic "climate of fear"). Under that definition, any bad act could be relevant. Any negative treatment of an alleged victim, however attenuated from performing labor, could count toward creating a "climate of fear."

The statute is not so broad. Its language "requires that serious harm [will] befall an employee if she did not continue to work" or a "threat that compels her to remain."[6] Behavior, however repugnant, that makes a person afraid—but is not tied to obtaining labor—is not relevant to the forced-labor charges. So the Court should exclude bad-acts evidence that is unrelated to obtaining forced labor.

**B.    *Serious harm must be more than mere excommunication or eternal damnation.***

The statute requires that the intent behind the plan is to make a person believe that refusing to provide labor will result in serious harm. It is this "serious harm," the Government argues, "is what a defendant uses to…compel the labor."[7] As the Government concedes, Congress did not define "serious harm" until after 2000.[8] Thus, the term's ordinary meaning applies. Congress intended the statute to address "cases where

---

[6] *Headley v. Church of Scientology Intern.*, 687 F.3d 1173, 1180 (9th Cir. 2012)(internal quotation marks omitted).
[7] Doc. 233 at 6.
[8] *Id.*

3

traffickers threaten harm to third persons, restrain their victims without physical violence or injury, or threaten dire consequences by means other than overt violence."[9] As the Tenth Circuit has held, the believed serious harm must be sufficient that, without the "unlawful means, the person would have declined to perform additional labor… ."[10]

Expulsion from a church is not "serious harm" under the forced-labor statute. When deciding whether a consequence or threat qualifies as a "serious harm" under the forced-labor statute, a court must separate "improper" "coercion and permissible warnings of adverse but legitimate consequences."[11] Even if that expulsion leads a person to "potentially" lose "contact with family," it does not rise to the level of "serious harm" required by the statute.[12] Nor is "warning of such a consequence" considered a 'threat'" under the statute.[13] After all, the First Amendment guarantees the right of church members to shun those who choose to leave church.[14] Cutting off contact with a member who has

---

[9] *United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011)(citing H.R.Rep. No. 106-939, at 1010, 2000 U.S.C.C.A.N. at 1392-93)(internal quotation marks omitted).
[10] *United States v. Kalu*, 791 F.3d 1194, 1212 (10th Cir. 2015).
[11] *Headley*, 687 F.3d at 1180 (internal quotation marks omitted).
[12] *Id.*; *see also United States v. Raniere*, 384 F. Supp. 282, 313-14 (E.D.N.Y. 2019)(same).
[13] *Headley* at 1180.
[14] *Paul v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, 819 F.2d 875, 883 (9th Cir. 1987).

abandoned the church is "is a legitimate consequence"—and warning a member about that consequence "is a legitimate warning."[15]

Nor do consequences in the afterlife constitute serious harm under the statute. The Government's Motion cites that several people "were told they would burn in eternal hellfire if they did not comply with UNOI rules or wanted to leave."[16] The UNOI is hardly unique in this regard. Many, if not most, religions threaten everlasting punishment for those who leave them. For instance, in Mormon theology, those who leave the church spend the afterlife in the eternal torment in "the outer darkness."[17] Catholicism likewise teaches that those who willfully turn away from God spend eternity in hell.[18] If the fear of punishment in the afterlife can serve as "serious harm" under the statute, then the Catholic Church could be indicted for obtaining the forced labor of altar boys.

That result would surely violate the First Amendment's Free Exercise and Freedom of Speech clauses. A necessary component of every religion is setting codes of correct conduct, along with the consequences in the afterlife for failing to adhere to those codes. Many of

---

[15] *Headley* at 1180.
[16] Doc. 233 at 16.
[17] https://www.churchofjesuschrist.org/study/manual/gospel-topics/hell?lang=eng
[18] Catechism of the Catholic Church, 1037, available at http://www.scborromeo.org/ccc/para/1037.htm

those codes require some form of contribution—whether monetary or in-kind—to the church. Warning members of the eternal consequences of violating those codes cannot be a component of a criminal offense without putting every religion at risk of an indictment. The First Amendment does not tolerate such a result.

## II.  The evidence listed by the Government does not make it more or less likely that Mr. Staton obtained labor by making a person believe they would suffer serious harm if they refused.

Once reoriented to the text, structure, history, and purpose of the statute, it becomes obvious that the Government's proposed evidence is irrelevant. Before a party can introduce evidence to the jury, that evidence must be relevant.[19] Relevant evidence must tend to make a consequential fact "more or less probable… ."[20] And even if evidence is relevant, a court should still exclude it if its "probative value" is "substantially outweighed by a *danger* of…unfair prejudice" or "confusing the issues… ."[21]

The Government claims that the evidence outlined below is "intrinsic" to the charges, and thus falls outside Rule 404's prohibition

---

[19] Fed. R. Evid. 402.
[20] Fed. R. Evid. 401.
[21] Fed. R. Evid. 403 (emphasis added).

6

on propensity evidence.[22] Evidence may qualify as "intrinsic" to an offense if that evidence is intertwined with the charged conduct, occurred at the same time as the conspiracy, was preliminary to the charged conduct, provides direct proof of a defendant's involvement in the offense, is relevant background information, directly connects to the crime's facts, or necessary background information.[23]

The Government unpersuasively argues that the evidence checks *each and every one* of these boxes.[24] Logically, actions cannot be both a "necessary preliminary to the" offense and "within the same timeframe" as the offense. The Government argues so anyway. What's more, it never explains *how* or *why* this evidence satisfies these intrinsic-evidence elements. It just declares that it does. Yet the Government, as the proponent of the evidence, bears the burden of proving its admissibility.[25] Without a reasoned explanation of how its proposed evidence qualifies as intrinsic evidence, it effectively waives the point.[26]

---

[22] Doc. at 27.
[23] *United States v. Cushing*, 10 F.4th 1055, 1074 (10th Cir. 2021)(citations omitted).
[24] Doc. 233 at 29.
[25] *United States v. Perez*, 989 F.2d 1574, 1580 (10th Cir. 1993).
[26] *See, e.g.*, *Miller v. Astrue*, No. 09-1354-JWL, 2010 WL 4810231, *5 (D.Kan. Nov. 19, 2010)(relying on Tenth Circuit authorities to hold plaintiff had waived issue by providing "no explanation" why the evidence supported a legal conclusion).

An opposing party cannot debate a bald conclusion. A court cannot evaluate the conclusion's logical underpinnings for validity.

The Government has not carried its burden to show that its proffered evidence is intrinsic to the charged offenses. And, for the reasons outlined below, the evidence does not directly prove any element of the charged offenses. Rather, it is not relevant to them.

## A.    *Mr. Staton's alleged refusal to provide prescription medication reflects a religious belief, physical abuse.*

The Government claims that Mr. Staton physically abused a girl by locking her in attic and refusing to give her an inhaler.[27] This argument suffers from at least three flaws. First, the girl's bedroom was the attic. So the Government's argument is really that Mr. Staton, who was acting *in loco parentis*, sent a ten-year-old girl to her room.[28] Second, rejection of modern medicine reflected UNOI's theology. That same spiritual belief is held by several religions, like Christian Scientists and Jehovah's Witnesses.[29] Third, the Government does not claim that sending the girl to her room, or withholding medication for

---

[27] Doc. 233 at 14-15.
[28] *See United States v. Toviave*, 761 F.3d 623, 625 (6th Cir. 2014)(holding, under state law, that person acting *in loco parentis* is entitled to "control, services, and earnings" of the minor).
[29] Swan, Rita. "Faith-Based Medical Neglect: for Providers and Policymakers." J. Child Adolesc. Trauma, 343-353 (Sep. 2020), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7545013/

religious purposes, was because of her refusal to perform labor or services. Or that it was calculated to induce her to perform labor. Thus, this evidence does not make any consequential fact more or less likely.[30]

The same is true for the punishments, handed out by others, in religious classes that Staton taught.[31] This discipline did not result from any person's refusal to perform labor. Rather, discipline was carried out when a person had deviated from UNOI's code of behavior. The Government does not claim that any of the classroom discipline resulted from a person's refusal to provide labor. Or that the discipline was intended to coerce others into providing labor. In other words, it does not make any consequential fact more or less likely.[32]

**B.    *Alleged "emotional abuse" was not prompted by refusing to provide labor.***

The Government argues that Mr. Staton emotionally abused others by "humiliating" them in the religious classes he taught.[33] Its Motion cites, as an example, Mr. Staton's public reading of a letter from an ex-member who sought to return to UNOI; the letter's content allegedly humiliated the member's wife.[34] Noticeably absent from the

---

[30] *See* Fed. R. Evid. 401.
[31] Doc. 224 at 15.
[32] Fed. Evid. 401.
[33] Doc. 233 at 20.
[34] *Id.*

Government's recitation of events is any mention of obtaining labor. The Government does not claim that this alleged "emotional humiliation" stemmed from a person's refusal to provide labor. Nor does it argue that it was intended to persuade a person to continue providing labor. If anything, its likely consequence would have been to *deter* ex-member from rejoining UNOI and depriving it of the ex-member's labor upon his return. Thus, these alleged instances of "emotional abuse" do not make any consequential fact more or less likely.[35]

### C.    *Mr. Staton's retention of documents and benefits that members voluntarily surrendered upon joining UNOI caused no one to fear serious harm if they refused to perform labor.*

The Government seeks to introduce evidence that Mr. Staton refused to return identification documents to UNOI members who sought to leave the church.[36] The Government does not argue that UNOI's alleged retention of those documents constitute "serious harm" under the statute. Or that a person's leaving the UNOI without those documents constituted serious harm to that person. Nor does it allege the UNOI conditioned the return of those documents on any person's continued labor. It draws no connections between the documents and

---

[35] Fed. R. Evid. 401.
[36] Doc. 233 at 24-25.

10

labor at all. So this evidence makes no consequential fact more or less likely, rendering it irrelevant.[37]

Nor does it matter that Staton was allegedly tasked with extracting monetary value from the benefit and credit cards the members voluntarily gave him.[38] When UNOI members joined the church, they were told that the value of these items would be used for the benefit of the church as a whole. The Government does not allege that threats of serious harm compelled the members to turn these cards over. Nor does it claim that church members were told they had to perform labor in order to avoid ruinous charges on their credit cards or to receive the food-stamp benefits they were entitled to. In short, the Government's Motion draws no connection between the retention or use of these cards and forced labor. That lack of a connection means this evidence makes no consequential fact more or less likely, so it is irrelevant.[39]

---

[37] Fed. R. Evid. 401.
[38] *See* Doc. 233 at 25 (outlining allegation).
[39] Fed. R. Evid. 401.

**D.    Evidence that Mr. Staton provided a false identification to a church member to enter a fashion show does not make it likely that any person provided labor out of fear of serious harm.**

The Government seeks to introduce evidence that Mr. Staton gave a fake ID to a church member so that she could enter church-made clothing into a fashion show in Las Vegas.[40] It does not attempt to explain how providing this ID to a church member would make that member afraid of serious harm if they refused to provide labor. Or how Mr. Staton intended to instill that fear by providing the ID. In other words, evidence about providing this identification will not make any material fact more or less likely.[41] Put simply, it is irrelevant.

**III.    The Government fails to establish that its evidence falls under Rule 404(b) because it does not explain how the evidence satisfies any of the Rule's proper purposes.**

Evidence of a defendant's prior bad acts is inadmissible to prove that the defendant acted the same way.[42] But evidence of a prior bad act may go to prove something else, like a defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[43] Here, the Government claims that, if it strikes out on its direct-evidence and intrinsic-evidence arguments, that the Court

---

[40] Doc. 233 at 26.
[41] Fed. R. Evid. 401.
[42] Fed. R. Evid. 404(a)(1), (b)(1).
[43] Fed. R. Evid. 404(b)(2).

should admit its proposed evidence under this prove-something-else

provision.[44]

The Government's argument is insufficient. It dedicates one

sentence to explaining how the evidence goes to show the defendants'

motive, intent, preparation, plan, knowledge, absence of mistake, and

lack of accident.[45] And this sentence does not explain, it concludes. For

instance, it reads that the "evidence bears on defendants' motive to

profit from the victims' labor… ." Yet it never explains why or how this

so. Ditto with other permissible purposes under Rule 404(b). The

Government does not argue, it concludes, without explanation, that the

evidence "bears on" these purposes.[46]

This conclusory recitation is not an argument. It does not reason

from a major premise to a minor premise to a conclusion. Nor does it

attempt reason by analogy. This lack of an explanation results in a

waiver of the argument.[47]

## Conclusion

Though it has brought a forced-labor prosecution, the Government

is scarce on evidence that UNOI members feared serious harm if they

---

[44] Doc. 233 at 33.
[45] Doc. 233 at 35.
[46] *See id.*
[47] *See Miller, supra* at n.26.

did not provide labor to the church. Members who wanted to leave, left. Like those who leave many religions, these members were warned that the UNOI would cut ties with them if they chose to leave. When members did leave, the UNOI did cut ties with those members. Just like other religions, the UNOI warned members who left the church that they were risking their immortal soul in the afterlife.

Rather than engage in a square contest over whether UNOI members were ever threatened with dire consequences if they refused to provide labor, the Government comes at this case sideways. It seeks to stack a mound of *different* acts—consistent with UNOI doctrine but few others—upon the defendants and hope the jury relies on those acts to convict the defendants. This trial should be about whether the defendants obtained the labor of the alleged victims by threatening physical force or severe harm. Permitting the Government to introduce this evidence will turn it into something else.

Respectfully Submitted,

/s/ Melanie S. Morgan
Melanie S. Morgan, Bar No. 16088
Morgan Pilate LLC
926 Cherry Street
Kansas City, Missouri 64106
Telephone 816-471-6694
Facsimile 816-472-3516
mmorgan@morganpilate.com

14

*Attorney for James Staton*

## CERTIFICATE OF SERVICE

I certify that a copy of this Motion was deposited with the Court's CM/ECF system, which shall distribute it to necessary parties, on January 30, 2024.

/s/ Melanie S. Morgan