**IN THE FEDERAL DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**KANSAS CITY DIVISION**

**UNITED STATES OF AMERICA**,
    *Plaintiff,*

v.                        No. **21-CR-20060-JAR**

**KAABA MAJEED,**
**YUNUS RASSOUL,**
  **a.k.a. YUNUS RASSOULL,**
**JAMES STATON**,
  **a.k.a. ADAM WINTHROP,**
**RANDOLPH RODNEY HADLEY,**
**DANIEL AUBREY JENKINS, and**
**DANA PEACH**,
    *Defendants.*

_____

**DEFENDANTS' JOINT RESPONSE TO GOVERNMENT'S**
**TRIAL BRIEF (DOC. 346)**

_____

The Government's Trial Brief mischaracterizes some of the law. Adam

Winthrop, formerly known as James Staton, submits this Joint Response so

that the Court may make its rulings against an accurate legal backdrop.

**I.**     **The Court should not permit the Government to refer to**
        **codefendants' testimonial statements during its opening**
        **statement because those statements cannot be used against all**
        **the defendants.**

The Sixth Amendment bars the Government from introducing a

testimonial statement into evidence without giving a defendant the right to

confront the statement's creator. Here, the Government intends to refer to

testimonial statements of codefendants during its opening statement. But

those statements are admissible only against those defendants, not *all* the

1

defendants. The limited way that the jury can receive and use these statements makes them ill-suited for a general opening statement. So the Court should exercise its authority to limit the Government to admitting these type of statements during its case-in-chief, which would allow the Court to give a contemporaneous limiting instruction to the jury.

**A.    *The codefendants' formal statements are testimonial because they were made to prove past events that are related to a potential criminal investigation.***

The Sixth Amendment to the United States Constitution guarantees defendants the right to confront the witnesses against them.[1] To enforce this guarantee, courts will not permit a prosecutor to introduce a witness's "testimonial" statements into evidence unless a defendant may cross-examine that witness about that statement.[2] A statement is "testimonial" if it is "a solemn declaration or affirmation made for the purpose of establishing or proving some fact."[3] This definition includes, "at a minimum to...police interrogations."[4] Further, statements to police—even if not the product of an interrogation—are testimonial if the statement's "primary purpose" is "to establish or prove past events potentially relevant to a later criminal prosecution."[5] In other words, a statement is testimonial if it is (1) a formal

---

[1] U.S. Const., amend. VI.
[2] *E.g.*, *Whorton v. Bockting*, 549 U.S. 406, 420 (2007).
[3] *Crawford v. Washington*, 541 U.S. 36, 51 (2004).
[4] *Id.* at 68.
[5] *Michigan v. Bryant*, 562 U.S. 344, 358 (2011).

declaration, akin to testimony, or (2) a statement made mainly to prove past facts related to a potential crime.

The statements the Government seeks to introduce are likely testimonial. In its Trial Brief, the Government declares its intent to admit "statements Defendants Majeed and Rassoul made to law enforcement" and "written affidavits provided by the defendants… ."[6] yet it identifies no specific statements.  The statements made by Majeed and Rassoul are testimonial because, "all of the relevant circumstances[]" show that their "primary purpose" was establishing facts for a criminal prosecution.[7]

The codefendants' affidavits provided are also testimonial. They are "solemn declaration[s] or affirmation[s]" made to prove some facts.[8] Each affidavit was solemn: a formal declaration, signed under the penalty of perjury. And each affidavit was made to prove facts—facts that the Court could rely on to take some action. Thus, the statements within those affidavits are testimonial.

**B.**     ***If a codefendant does not testify, then that codefendant's testimonial statements are only admissible against that codefendant and must not implicate any other codefendant.***

Under the Federal Rules of Evidence, the testimonial statements made by the codefendants are admissible only against those codefendants. A party's

---

[6] Doc. 346 at 16.
[7] *Bryant*, 562 U.S. at 369.
[8] *Crawford*, 541 U.S. at 51.

statement, offered by the opposing party, is not hearsay.[9] Yet this rule only permits the Government to admit the defendant's statement against *that* defendant—it cannot be used against any codefendants.[10] To be sure, the Government may admit a codefendant's statements against all codefendants *if* those statements meet the Rule's coconspirator exclusion.[11] But the Government's Trial Brief does not claim that these statements—those to law enforcement or the affidavits—qualify for that exclusion.[12] So the Government may not admit a codefendant's non-conspiratorial statement against any other defendant. Ordinarily, the Court would give a limiting instruction—contemporaneous with the statement's introduction into evidence—explaining how the jury could use the statement.[13]

But if a statement has two characteristics, then a limiting instruction is insufficient. A non-testifying codefendant's statement that is (1) testimonial and (2) implicates any other codefendant is inadmissible.[14] For over 50 years, the rule for statements like these has been that "limiting instructions" fall short of "an adequate substitute for" a defendant's "right of cross-examination."[15] And the Tenth Circuit is clear that this rule covers a non-

---

[9] Fed. R. Evid. 801(d)(2)(A).

[10] *See United States v. Wolf*, 839 F.2d 1387, 1393 (10th Cir. 1998)(analyzing codefendant statements under the coconspirator exception to determine if they should have been admitted against a defendant).

[11] Fed. R. Evid. 801(d)(2)(E).

[12] *See* Doc. 346 at 16 (relying exclusively on Rule 801(d)(2)(A) for authority to introduce the statements).

[13] *See, e.g.*, *Bruton v. United States*, 391 U.S. 123, 135-37 (1968) (explaining the ordinary practice of limiting instructions for hearsay and when they might not be effective).

[14] *Bruton*, 391 U.S. at 137.

[15] *Id.* at 137.

testifying codefendant's testimonial statements.[16] Thus, if the Government intends to argue that the codefendants' statements to law enforcement or affidavits constitute evidence against *other* codefendants, then those statements are inadmissible.

Put simply, the Government may admit a codefendant's statement against all defendants if that statement was made (1) during the conspiracy and (2) to further the conspiracy.[17] If the codefendant's statement was not made during the conspiracy or to further the conspiracy, then the Court must determine whether the statement is testimonial. If the statement is not testimonial, then the Court may admit the statement only against the codefendant who made the statement, accompanied by a limiting instruction to the jury to that effect.[18] If the statement is testimonial, then the Court must determine whether it implicates any other codefendant. If it does not, then the Court may admit the statement only against the codefendant who made the statement, accompanied by a limiting instruction to the jury to that effect.[19] If the statement is testimonial and implicates any other codefendant, then the Court may not admit the statement.[20]

---

[16] *United States v. Clark*, 717 F.3d 790, 815-16 (10th Cir. 2013).
[17] Fed. R. Evid. 801(d)(2)(E).
[18] *Bruton*, 391 U.S. at 135-37.
[19] *Id.*
[20] *Id.* at 137.

### C.   The Court should prohibit the Government from referring to any codefendant's non-conspiratorial statement during opening statement.

In its Trial Brief, the Government announces its intent to refer to codefendants' statements "during its opening statement… ."[21] Those statements include those made by codefendants to law enforcement and affidavits.[22] Consistent with the analysis above, these statements require *at least* a limiting instruction that tells the jury that it can only use those statements against those who made the statements.[23] And if the statements are testimonial and implicate other codefendants, then they are not admissible at all.[24] In other words, the Government plans to refer to evidence that (at minimum) requires a contemporaneous limiting instruction during its opening statement.

The Court should not allow it. The Rules of Evidence give this Court the authority to "exercise reasonable control over the mode and order of…presenting evidence" to help the jury effectively determine the truth.[25] An opening statement is not the proper place to refer to evidence that requires a contemporaneous limiting instruction. An opening statement's purpose is "narrow"—stating "which evidence will be presented," making "it easier for the jurors to understand what" will follow, and "relate parts of the evidence…to

---

[21] Doc. 346 at 16.
[22] *Id.*
[23] Section. I(B), *supra.*
[24] *Bruton*, 391 U.S. at 137.
[25] Fed. R. Evid. 611(a)(1).

6

the whole… ."[26] Referring to evidence that comes with specific—and often confusing—limitations on its use serves none of these purposes. The parties may (and likely will) disagree about who the statement is admissible against, whether it is admissible at all or requires a limiting instruction. The defense would have to object during the Government's opening statement whenever it refers to a codefendant statement, forcing the Court to answer these questions at a bench conference while the jury cools its heels in the box. Then the Court must either strike the Government's reference, or give a limiting instruction as to a statement that may not actually be admitted for days (or weeks), or do nothing.

    None of this would help the jury. A stop-and-start opening statement makes the jury less likely to follow a narrative, especially one as complex as the Government must weave at this trial. And this sputtering-for-objections-and-bench-conferences procedure, required by the Government's stated intent, wastes the jury's time.

    Rather than going through such a convoluted process during the Government's opening statement, the Court should prohibit the Government from referring to codefendant's non-conspiratorial statements during its opening statement. This prohibition will have only a slight effect on the Government's case: it can still seek to admit the statements into evidence, allowing the Court to determine whether to admit them and if they require a

---

[26] *United States v. Dinitz*, 424 U.S. 600, 612 (1976)(Burger, C.J., concurring).

limiting instruction. And if the Court does admit the statements, the Government can refer to them during its closing argument.

The alternative risks a mistrial. If the Government refers to a codefendant statement during its opening statement, and the Court later determines that the statement cannot be admitted into evidence, then the prejudice from that opening-statement reference may have already deprived the defendants of a fair trial. The Supreme Court recognizes that "some remarks" in an opening statement may "be so prejudicial that a finding of error, or even constitutional error, would be unavoidable."[27] This Court has the chance to avoid that type of error here. It should take it.

## II. Any defendant may properly use an investigative report to refresh a witness's recollection.

In its Trial Brief, the Government claims that the defendants "should not be permitted to cross-examine or seek to impeach a witness with an investigative report that the witness has" neither "signed" nor "otherwise adopted."[28] And that request adheres to the Federal Rules of Evidence. But the Government goes further, asking the Court to prohibit the defendants from *referring* to *any* investigative report during *any* witness's testimony, "unless that witness prepared the report."[29] And that, if using a report to refresh a witness's recollection, the defense "should not be permitted to announce what"

---

[27] *Frazier v. Cupp*, 394 U.S. 731, 736 (1969).
[28] Doc. 346 at 21.
[29] *Id.* at 22.

counsel is showing the witness.[30] The United States cites no authority for such limits on cross-examination, presumably because it has none.

And that would not be surprising. Defendants have a constitutional right to cross-examine the witnesses against them.[31] That right includes attempting to refresh a witness's recollection about what that witness said in the past. If a witness claims to not remember saying something to, for instance, Agent Smith on January 12, 2014, then the defendants have a right to try to help the witness remember what the witness said. And, in this example, Agent's Smith's investigative report about that interview is an appropriate document to use to try to refresh that memory.

Prohibiting the defense from identifying the document defeats that endeavor. Simply thrusting a document at a witness, without context, and asking if it refreshes the witness's memory is not a tactic designed to help anyone remember anything. Rather, a questioner should ask if the witness remembers meeting with Agent Smith on a certain date at a particular place, that they talked about the relevant subject, if the witness remembers Agent Smith taking notes, and similar place-setting questions. Once oriented to the conversation, the report has a greater chance of refreshing the witness's memory.

---

[30] *Id.* at 23.
[31] *E.g.*, *Pointer v. Texas*, 380 U.S. 400, 404 (1965).

The Government's request, on the other hand, would make it less likely—perhaps impossible—for the defense to attempt to refresh any witness's recollection. Placing that kind of shackle on a defendant's right to cross-examination should come with substantial justification. The Government offers none here.

### III.    The Court should admit "good acts" evidence when that evidence is relevant to issue in the case.

The Government asks this Court to prohibit the defendants from introducing "any evidence of the defendants' general good character or" "specific instances of good conduct."[32] The Government correctly notes that Rule 404 generally bars a party from introducing evidence "of a person's character…to prove that on a particular occasion" the person acted consistent with that character.[33] But not all evidence of good character, or specific acts of good character, fall under Rule 404's prohibition.

### A.    *The defendants may introduce specific "good acts" evidence because it is intrinsic to whether the defendants used a "culture of fear" to coerce free labor.*

As the Government ably argued in its own briefing, Rule 404 does not bar "intrinsic evidence."[34] Evidence is "intrinsic" if it is "directly connected to the factual circumstances of the crime and provides contextual or background information to the jury."[35] Evidence is intrinsic to the offense if, for example, it

---

[32] Doc. 346 at 28.
[33] Fed. R. Evid. 404(a).
[34] *See* Doc. 233; *United States v. Oles*, 994 F.2d 1519, 1522 (10th Cir. 2010)(citations omitted).
[35] *United States v. Cushing*, 10 F.4th 1055, 1075 (10th Cir. 2021)(quotation omitted).

(1) occurred during the conspiracy, (2) constitutes "germane background information" related to the offense; or (3) necessarily gives the jury background about a defendant's relationships with others.[36]

Here, the Government accuses the defendants of coercing labor from unwilling victims through a "climate of fear."[37] The Court has already found that evidence tending to establish that type of climate—including evidence of physical abuse, sexual abuse, threats of abuse, and isolation—is "intrinsic" to the offense.[38] Now the Government seeks to bar the defendants from showing the jury the other side of the coin. It asks this Court to prohibit the defendants from introducing evidence that would show there was no climate of fear, like "evidence of specific instances of good conduct."[39] Yet, if this evidence would tend to dispel the "climate of fear" the defendants allegedly used to coerce labor, then it is intrinsic to the offense. So Rule 404 does not prohibit it.

## B.    The defendants may use "reverse 404(b)" evidence of specific instances of conduct to show they lacked the relevant mental state to commit the offense.

But the defendants are not limited to reputation or opinion evidence. A defendant may introduce evidence of her own good acts if that evidence bears on something pertinent to the case. A straightforward reading of Rule 404 shows that it bars only evidence of acts "unrelated to the conduct at issue" that

---

[36] *United States v. Kupfer*, 797 F.3d 1233, 1238 (10th Cir. 2015).
[37] Doc. 317 at 10. We maintain our objection to this finding, as expressed in our proposed jury instructions and our objections to the government's jury instructions.
[38] *Id.*
[39] Doc. 346 at 28.

are offered only "to prove a propensity to behave in a particular manner."[40] Yet a defendant can offer evidence of her own good acts for a different purpose. "As is true with bad act evidence, evidence of good acts is also admissible for a proper purpose such as motive, intent, absence of mistake, etc."[41] As the Seventh Circuit explains, it does "not make much difference" if the prior act "is laudable or unlawful"—only that the act "makes more or less likely the existence of some fact that matters."[42]

The evidence that the Government seeks to squash is neither unrelated to the conduct at issue nor offered solely to prove propensity. Rather, that evidence shows how the defendants, acting through UNOI, cared for their children, performed charitable work, or engaged in community service.[43] As argued above, this type of evidence is intrinsic to the offense because it shows that the defendants' acts stemmed from sincere religious beliefs.[44] And that those beliefs extended beyond "coercing" labor from others, but also laboring themselves for the community's benefit. That evidence is directly related to the alleged conduct here. Nor would the evidence be offered solely to prove propensity. Rather, the evidence would show that the defendants did not intend to profit from the alleged "coerced" labor, but that they also gave back to the community. And evidence that the defendants took care of their children

---

[40] *Tanberg v. Sholtis*, 401 F.3d 1151, 1167 (10th Cir. 2005).
[41] *United States v. Ali*, 870 F. Supp. 2d 10, 23 (D.D.C. 2012)(quoting *United States v. Hayes*, 219 Fed. Appx. 114, 116 (3d Cir. 2007)(unpublished)).
[42] *United States v. Burke*, 781 F.2d 1234, 1243 (7th Cir. 1985).
[43] Doc. 346 at 30.
[44] *See* Sec. III(A), *supra*.

would be admissible to show that the defendants did not intend to create a "climate of fear" to coerce others.

Rule 404 does not sweep as far as the Government claims. It only prohibits evidence about *unrelated* acts, offered *solely* to prove propensity to commit those type of acts. If an act is *related* to the offense, then Rule 404 does not prohibit it (provided it satisfies other evidentiary requirements). If evidence of the act is offered for a reason *other than propensity*, then Rule 404 does not prohibit it.

## IV.    The law regarding withdrawal from a conspiracy.

In defendants' joint objection to the government's proposed jury instructions, we have proposed instructing the jury on this issue by using the Tenth Circuit's Pattern Instruction 2.22: "In order to find that the defendant withdrew from the conspiracy, you must be convinced that the defendant has proved by a preponderance of the evidence that he took an affirmative step to defeat the purpose of the conspiracy, either by reporting to the authorities or communicating to his coconspirators that he was no longer participating in the conspiracy." The Pattern Instruction sufficiently states the law on withdrawal, and any further limitation would be error.[45]

---

[45] *See United States v. Gypsum Co.*, 438 U.S. 422, 464 (1978) ("The [instruction], fairly read, limited the jury's consideration to only two circumscribed and arguably impractical methods of demonstrating withdrawal from the conspiracy.").

13

Whether a defendant has withdrawn from a conspiracy is a fact-intensive inquiry best left to the jury to resolve.[46] Indeed, when a defendant argues that he withdrew by communicating his withdrawal to his coconspirators, he must show that he did so "in a manner that reasonably and effectively notifie[d] the conspirators that he will no longer be included in the conspiracy"[.][47] What qualifies as a "reasonable" and "effective" communication will depend on the context of each conspiracy, but nothing in the law "requires the hiring of a calligrapher to print formal notices of withdrawal to be served upon coconspirators."[48]

## Conclusion

The Government's Trial Brief overreaches in the areas pointed out above. The defense hopes this Response aids the Court in handling evidentiary questions that arise during trial.

---

[46] *See id.* ("Nothing that we have been able to find in the case law suggests, much less commands, that such confining blinders be placed on the jury's freedom to consider evidence regarding the continuing participation of an alleged conspirator in the charged conspiracy.").

[47] *United States v. Randall*, 661 F.3d 1291, 1295 (10th Cir. 2011).

[48] *United States v. Nerlinger*, 862 F.2d 967, 974 (2nd Cir. 1988); *United States v. Lowell*, 649 F.2d 950, 955 (3rd Cir. 1981) ("affirmative action sufficient to show withdrawal as a matter of law from the conspiracy embodied in the business association may be demonstrated by the retirement of a coconspirator from the business, severance of all ties to the business, and consequent deprivation to the remaining conspirator group of the services that constituted the retiree's contribution to the fraud.") (internal quotation marks omitted).

Respectfully submitted,

/s/ Melanie S. Morgan
Melanie S. Morgan, Bar No. 16088
Kylie P. Mank, Bar No. 78955
MORGAN PILATE LLC
926 Cherry Street
Kansas City, MO 64106
Telephone:  816-471-6694
Facsimile:  816-472-3516
mmorgan@morganpilate.com
kmanke@morganpilate.com
*Attorney for Mr. Adam Winthrop*

/s/ W. Scott Toth
GARRETSON & TOTH, LLC
105 East Park
Olathe, Kansas 66061
Phone: 913/948-6682
Fax:   913/948-6681
scott@garretsontoth.com
*Attorney for Kaaba Majeed*

*/s/ Tricia A. Bath*
Tricia A. Bath            #18024

*/s/ Robin D. Fowler*
Robin D. Fowler          #11752
**BATH & EDMONDS, P.A.**
4000 W 114th Street, Suite 210
Leawood, KS 66211
(913)652-9800; Fax (913) 213-1849
E-mail:  tricia@bathedmonds.com
robin@bathedmonds.com
**Attorneys for Yunus Rassoull**

/s/ Michael C. Duma
Michael Duma #24959
Duma Law Offices
303 E. Poplar St.
Olathe, KS 66061
(913) 782-7072
Fax: (913) 782-1383
michael@dumalaw.com
Attorney for Defendant Hadley

15

s/Kirk C. Redmond
Kirk C. Redmond #18914
First Assistant Federal Public Defender
Federal Public Defender's Office
632 SW Van Buren, Suite 200
Topeka, KS 66603
Telephone: (785) 232-9828
Fax: (785) 232-9886
Email:  kirk_redmond@fd.org


s/ Ellen Albritton
ELLEN ALBRITTON
Sup. Ct. No. 28978
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6170
Fax: (316) 269-6175
E-mail:  Ellen_Albritton@fd.org
Attorneys for Daniel Aubrey Jenkins


/s/ Branden Smith
Branden Smith #22761
SMITH LEGAL, L.L.C.
719 Massachusetts Street, Suite 126
P.O. Box 1034
Lawrence, Kansas 66044
(785) 856-0780 P
(785) 856-0782 F
branden@smithlegalllc.com
Attorneys for Dana Peach

## **CERTIFICATE OF SERVICE**

I certify that I deposited this document in the Court's CM/ECF system, which will distribute notice to the appropriate parties, on July 24, 2024.

/s/ Melanie S. Morgan